UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M. AMELIA (NEAL) JERMANO,                    Case No. 11-10739

             Plaintiff,                    District Judge Avern Cohn

v.                                           Magistrate Judge R. Steven Whalen

TROY TAYLOR, ET AL.,

             Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant Michael McCarthy's *Motion to Dismiss Pursuant to Rule 12(b)(6)* [Dock. #30] filed on June 1, 2011, and Defendant Martin Krohner and Dean Eldon's *Motion to Dismiss Pursuant to Rule 12(b)(6)* [Dock. 33], filed June 7, 2011, which have has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the both motions be GRANTED, dismissing these Defendants WITH PREJUDICE.

## I. BACKGROUND

Plaintiff filed a *pro se* civil complaint on February 23, 2011, naming 48 Defendants in 25 counts, including members of the Oak Park and Troy, Michigan police departments. Her second amended complaint, filed April 29, 2011, pertains to the alleged actions by various police officers and agencies, and a state criminal action against her for violating a PPO and aggravated stalking. She alleges violations of her constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, violations of various federal criminal statutes and a number of state law claims. *Docket #11.*

On January 21, 2009, Defendant Anna Magner, Plaintiff's former psychological

counselor, petitioned for a PPO on the basis that Plaintiff had been calling her 15 times a day at work, and 50 to 60 times on her cell phone, threatening bodily harm and destruction of Magner's career. *Docket #11-1,* pg. 37 of 50. Between April, 2008 and January, 2009, Defendant Magner contacted the police 13 times. *Docket #11-2,* pg. 15-16. Plaintiff alleges that on February 20, 2009 while driving through Troy, Michigan, she was arrested following a traffic stop, based on an outstanding warrant for violating the PPO. *Second Amended Complaint* at ¶105. Following the February 20, 2009 arrest, Plaintiff was detained at the Oakland County Jail for 228 days before the aggravated stalking charges were dismissed. *Id.* at ¶177(p).

The present motions are brought by Plaintiff's three court appointed attorneys. Defendant Krohner was appointed as counsel for Plaintiff on February 27, 2009. *Exhibit 1, Docket #33.* On March 3, 2009, Krohner unsuccessfully petitioned for a reduction of bond, which had been set at $500,000 on February 21, 2009 on the charge of aggravated stalking. *Id.* On March 19, 2009, Krohner represented Plaintiff at her preliminary examination and again unsuccessfully petitioned for a bond reduction. *Id.* On April 15 and on May 13, 2009, Krohner unsuccessfully requested bond reductions. *Id., Exhibit 2.* Between March 30, 2009 and June 3, 2009, he also filed motions for the appointment of an investigator, a pre-examination transcript, two motions to quash, and a motion for dismissal/evidentiary hearing. *Id.* at Exhibits 3a-3h. Krohner's motion for dismissal of the charges argued that the January, 2009 PPO was not properly served, which formed the grounds for the eventual dismissal of the charges against Plaintiff. *Id.* at 3g. Krohner withdrew as Plaintiff's counsel on June 10, 2009. *Id.* at Exhibit 1.

Defendant McCarthy was appointed as Plaintiff's counsel on June 11, 2009. *Id.* In response to Krohner's motion for dismissal, the prosecutor offered to allow Plaintiff to plead

to a misdemeanor stalking charge with a sentence of time served. *Id.* at Exhibit 4 at pgs. 2-4. McCarthy met with Plaintiff on June 14, 2009. *Second Amended Complaint* at 65. On July 4, 2009, McCarthy met with Plaintiff, advising her to take the plea offer, noting that if Plaintiff refused the deal, the prosecutor had stated her intention to re-charge her with aggravated stalking on the basis that she had made "credible" threats against Magner. *Exhibit 3, Docket #33* at pg. 3. The Complaint alleges that during the meeting, Plaintiff discharged McCarthy, stating that she wanted to represent herself. *Second Amended Complaint* at 65.

In a hearing on July 6, 2009, McCarthy, noting that the prosecutor intended to recharge Plaintiff, stated that based on his recent discussions with Plaintiff, he was not sure that she was competent to stand trial. *Exhibit 4, Docket #30* at pg. 3. The court, also noting the receipt of Plaintiff's numerous letters to himself and the chief judge, ordered a forensic exam on July 9, 2009. *Id.* at pg. 7. Plaintiff was found competent and on October 6, 2009, McCarthy successfully requested that Plaintiff's bond be reduced to $5,000 upon remand to district court. *Second Amended Complaint* at 45; *Docket #11-2* at pg. 23 of 25. On October 14, 2009, McCarthy appeared in court on Plaintiff's behalf and on November 11, 2009, filed a motion for recusal of the district court judge. *Exhibit 1, Docket #30.* On January 8, 2010, Plaintiff filed a motion to terminate McCarthy, which was granted on February 3, 2010. *Id.*

Defendant Eldon's representation of Plaintiff was limited to a separate case brought in Oakland County Circuit Court Family Division for violating the PPO. *Exhibit 5, Docket #33, Magner v. Amelia Germaine,* Case no. 09-755097. He represented Plaintiff at her March 6, 2009 arraignment at which bond was set at $100,000. *Id., Exhibit 6a.* Show cause hearings were set for March 20, 2009 and May 15, 2009, but were adjourned to June 26, 2009 as a result of the pending aggravated stalking case. *Id., Exhibit 6b.* In the meantime,

the court dismissed the show cause order on June 10, 2009 after the prosecutor acknowledged that the PPO had been improperly served. *Id.,* Exhibit 5. Eldon confirmed that the bond was cancelled in the PPO case. *Id.* Plaintiff requests monetary damages against these Defendants. *Second Amended Complaint* at pgs. 78-80.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 127 S.Ct. at 555 (internal citations and punctuation omitted); *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First,

-4-

it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

### III. ANALYSIS

The allegations against Defendants McCarthy, Krohner, and Eldon, read against Plaintiff's own exhibits showing that each lawyer adequately represented her interests over the course of her incarceration, are patently without merit. That said, I will discuss the claims against each  Defendant.

#### A. Constitutional Claims

For purposes of Plaintiff's § 1983 claims, none of these Defendants is  subject to suit. A lawyer representing a client is not a state actor under color of state law within the meaning of § 1983. *Polk County v. Dodson,* 454 U.S. 312, 324-325; 102 S.Ct. 445; 70 L.Ed.2d 509 (1981)(public defender is not state actor for purposes of § 1983).  Plaintiff does not dispute these attorneys represented her at various pretrial hearings.   Private attorneys representing private citizens do not act under color of state law.  Further, Plaintiff's generalized allegation that these Defendants conspired with state officials, without  plausible factual support, does not constitute a claim upon which relief can be granted under *Iqbal.*  Accordingly, Plaintiff's claims under § 1983 should be dismissed.

### B.  Claims Brought Under Title 18 of the United States Code

To the extent that the claim can be read to implicate her attorneys in criminal misfeasance, none of the statutes relied upon by Plaintiff  (18 U.S.C. §§ 4, 211, 242, 1512, 1001, 1505, 1506, 249) contain a private cause of action.  *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 386 (6th Cir.1997)**.**  Moreover, as a private citizen, Plaintiff "has no authority to  initiate a federal criminal prosecution of the defendants for their alleged unlawful acts." *Kafele v. Frank & Wooldridge Co.,* 108 Fed.Appx. 307, 308-309, 2004 WL 1859348, *2 (6th Cir. 2004)(citing *Diamond v. Charles,* 476 U.S. 54, 64-65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)).  As such, all claims brought under Title 18 of the United States Code should be dismissed.

### C.  Malpractice and Other State Claims Should Also be Dismissed

#### 1.  Defendant Krohner

Plaintiff makes the following allegations about Krohner, who was appointed on February 27, 2009.  *See Second Amended Complaint, Count 9,* pgs. 59-66.

According to Plaintiff, when she asked Krohner why she continued to be held in a maximum security of the Oakland County Jail, Krohner told Plaintiff to "[ta]ke a plea or you'll stay in jail."  Krohner laughed "mockingly" when she protested that police reports stated that she was "clean shaven" and "Jewish" and at other times joked about the stalking charge.  Krohner failed to subpoena Magner's telephone records.  Krohner delayed filing critical motions for weeks, then filed redundant ones instead and refused to file motions challenging procedural violations.  Krohner refused to challenge her detention, despite the fact that she developed an eye infection and dental problems due to the substandard prison conditions.  He proceeded with a bond reduction hearing while Plaintiff waited in a cold holding cell.  Krohner ignored Plaintiff's requests for an evidentiary hearing.  Krohner failed

-6-

to challenge Defendant Magner's testimony at the preliminary exam. Krohner allowed police to destroy exculpatory evidence contained in Plaintiff's impounded car.

### 2. Defendant Eldon

Plaintiff makes the following allegations against Eldon, who first represented her at the March 6, 2009 arraignment on the PPO charges.

When a bail of $100,000 was ordered, Eldon told the judge "I thought you'd say $100 dollars," thus proving that Eldon was colluding with others to delay her arraignment. After being present at the arraignment, Eldon did nothing on her case four-and-a-half months. Eldon laughed "mockingly" when Plaintiff expressed her concerns about her physical description on the police reports.

### 3. Defendant McCarthy

Plaintiff makes the following allegation against McCarthy, who first represented her on June 11, 2009.

McCarthy maliciously asked the Court to order a forensic examination after Plaintiff stated that she wanted to represent herself, as a result of which, she spent the next four months in jail. McCarthy's motion for a forensic examination was also precipitated by Plaintiff's own filing of a 19-page "writ of habeas corpus." McCarthy requested the forensic examination because he equated homosexuality with insanity. McCarthy threatened Plaintiff that if she did not accept the prosecutor's plea deal, she would remain in jail. McCarthy's motion for a forensic examination was also motivated by his desire to hide his own fraud on the court. McCarthy was prejudiced against homosexuals.

### 4. The Attorney Judgment Rule

To show legal malpractice under Michigan law, the claimant must show the following:

"(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff;(3) that the negligence was a proximate cause of an injury; and; (4) the fact and extent of the injury alleged." *Symko v. Blake,* 448 Mich. 648, 655, 532 N.W.2d 842 (1995). "Michigan law also recognizes an affirmative defense known as the attorney judgment rule." *Bowman v. Gruel Mills Nims & Pylman, LLP,* 2007 WL 1203580, *4 (W.D.Mich.2007) "The attorney judgment rules provides that 'an attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client but is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession.'" *Id.* (citing *Symco,* at 656, 532 N.W.2d 842)(internal citations and punctuation omitted).

Plaintiff's own exhibits defeat her allegations of either negligence or deliberate misfeasance by these Defendants. As to Krohner, the court docket shows that between the time he was appointed on February 27, 2009 and his June 10 withdrawal as counsel, he requested a bond reduction on three occasions. He filed motions for the appointment of an investigator, and a motion for an evidentiary hearing/dismissal resulting in the dismissal of the aggravated stalking charge. Plaintiff's allegations that Krohner laughed "mockingly" when she disputed her description in the police report and made jokes about stalkers does not establish legal malpractice. Plaintiff does not state that Krohner was responsible for the fact that she was left in a holding cell over the course of a hearing.

While Plaintiff faults Krohner for not cross-examining Defendant Magner at the preliminary exam, "it is a tactical decision whether to call particular witnesses, as long as the attorney acts with full knowledge of the law and in good faith." *Symco,* at 660, 532 N.W.2d 842 (citing *Woodruff v. Tomlin,* 616 F.2d 924, 933 (6th Cir. 1980)(decision to not cross-examine witness did not amount to malpractice). The fact that Krohner did not subpoena

Magna's telephone records, as urged by Plaintiff, does not show, by itself, that he did not "exercise a reasonable degree of skill and care" in pursuing Plaintiff's defense. *Symco,* at 658. Although Plaintiff alleges that Krohner negligently allowed evidence contained in her impounded car to be destroyed, Plaintiff does not allege that the records could not be recreated or that her case was otherwise prejudiced as a result. Given the fact that the aggravated stalking charge was dismissed, she can scarcely claim that they were critical to her defense.

Claims against Elder are specious at best. Elder's alleged in-court statement that he thought the judge would order a lesser bail amount cannot be interpreted to support a claim that he colluded with others to delay Plaintiff's release from jail. Even assuming that Eldon (as well as Krohner) laughed "mockingly" at her concerns about her description on a police report, Eldon's mocking laugh does not establish that he committed malpractice or colluded with others to deprive her of her due process rights. If true, this might show at most that he was a jerk. Many highly competent attorneys act like jerks now and then. Although Plaintiff believes that Eldon negligently did "nothing" for four-and-a half months, the family division case to which he was assigned was adjourned repeatedly as a result of developments in the original, aggravated stalking case. She does not deny that over the course of Eldon's representation, she was continuously represented by either Krohner or McCarthy. Plaintiff does not deny that Eldon ensured her bond was cancelled at the time of dismissal.

Likewise, Plaintiff fails to state a claim of malpractice against McCarthy. Following an apparently contentious meeting on July 4, 2009, McCarthy motioned for a forensic exam of Plaintiff. Plaintiff offers no support for her conjecture that he requested the forensic exam because he was prejudiced against homosexuals or was seeking to hide his own misfeasance. Indeed, McCarthy stated in open court that he was not convinced that Plaintiff was capable

of representing herself at trial or assisting in her own defense. *Exhibit 3* at 5, *Docket #30.*
The judge, urging Plaintiff not to speak on her own behalf, observed that he and the "chief
judge" had already received lots of communication from [her] in written form." *Id.* at 6.
Notably, the judge granted McCarthy's request for a forensic exam.

Plaintiff's failure to state a viable claim of malpractice also forecloses her allegations
that these attorneys committed intentional torts while representing her. While the question
of whether Plaintiff has stated a claim of abuse of process and malicious prosecution against
other Defendants is not at issue in these motions, Plaintiff's conclusory assertion that present
Defendants "knowingly and recklessly allowed abuse of process and malicious prosecution,"
is also subject to dismissal under the *Iqbal* standard.[1]

## IV.   CONCLUSION

For these reasons, I recommend that both motions to dismiss [Doc. #30 and #33]
be GRANTED, dismissing present Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of

---

[1]To recover pursuant to a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding." *Bonner v. Chicago Title Ins. Co.,* 194 Mich.App. 462, 472-473, 487 N.W.2d 807, 812-813 (Mich.App.1992). "The ability to maintain the action does not depend either on the absence of probable cause for the initial proceeding or on its termination in favor of the abuse of process plaintiff." *Westmac, Inc. v. Smith,* 797 F.2d 313, 321 (6th Cir.1986); *Petersen v. Everett,* 2001 WL 1545897, *1 (Mich.App.2001); MCL 600.5805(10).
The "elements of a tort action for malicious prosecution of civil proceedings are (1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, and (3) 'malice,' more informatively described by the Restatement as 'a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based.' " *Friedman v. Dozorc,* 412 Mich. 1, 48, 312 N.W.2d 585 (1981) (quoting 3 Restatement Torts, 2d, §§ 674–681B, pp 452–473).

service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v*

     *Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

     Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

               s/ R. Steven Whalen
               R. STEVEN WHALEN
               UNITED STATES MAGISTRATE JUDGE

Date:  February 29, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 29, 2012.

M Amelia (Neal) Jermano           s/Johnetta M. Curry-Williams
PO Box 58                         Case Manager
Birmingham, MI 48012-0058