UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M. AMELIA (NEAL) JERMANO,   Case No. 11-10739

    Plaintiff,   District Judge Avern Cohn

v.   Magistrate Judge R. Steven Whalen

TROY TAYLOR, ET AL.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Jessica Cooper, Joanne Pray, Oakland County Jail and Michael Bouchard's *Motion to Dismiss and for Summary Judgment* [Dock. #58] filed January 4, 2012, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

**I.  BACKGROUND**

Plaintiff filed a *pro se* civil complaint on February 23, 2011, naming 48 Defendants in 25 counts, including members of the Oak Park and Troy, Michigan police departments. Her second amended complaint, filed April 29, 2011, pertains to the alleged actions of various police officers and agencies, and a state criminal action against her for violating a PPO and aggravated stalking.  She alleges violations of her constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, violations of various federal criminal statutes and a number of state law claims. *Docket #11*.

On January 21, 2009, Defendant Anna Magner, Plaintiff's former psychological counselor, petitioned for a PPO on the basis that Plaintiff had been calling her 15 times a day

at work, and 50 to 60 times on her cell phone, threatening bodily harm and the destruction of Magner's career. *Docket #11-2,* pg. 15-16. Between April, 2008 and January, 2009, Defendant Magner contacted the Oak Park, Michigan Police Department 13 times as a result of Plaintiff's alleged harassment. *Docket #11-1,* pg. 37 of 50. Plaintiff alleges that on February 20, 2009 while driving through Troy, Michigan, she was arrested following a traffic stop, based on an outstanding warrant for violating the PPO. *Second Amended Complaint* at ¶105. Following the February 20, 2009 arrest, Plaintiff was detained at the Oakland County Jail for 228 days before the aggravated stalking charges were dismissed. *Id.* at ¶177(p).

Plaintiff's factual allegations against the present Defendants are summarized as follows. Following her February 20, 2009 arrest, Plaintiff alleges that she was "placed in a small cold dirty over-crowded cell with three other inmates and given a cracked dirty mat to sleep on the floor with" before being classified. *Id.* at ¶114. She alleges that subsequently, she was placed in maximum security at the Oakland County Jail, exposing her to mentally unstable and violent felons. *Id.* at ¶115. She alleges that she was "housed" with "a criminally and violently insane inmate" who staged a violent attack on a deputy one week after Plaintiff's arrest.[1] *Id.* at ¶116. She alleges that during the course of her incarceration, her life was threatened by other inmates. *Id.* at ¶117. She alleges that Defendant Oakland County Sheriff Michael Bouchard ("Bouchard") kept her incarcerated despite the fact that during her incarceration, violent prisoners were being released due to prison overcrowding. *Id.* at ¶118. She alleges Bouchard's failure to release her was animated by discriminatory intent. *Id.* at ¶122. Plaintiff contends that her security classification was based upon an

---

[1] Plaintiff does not specify whether the individual who attacked the deputy was a cell mate, had been assigned to the same unit, or was incarcerated elsewhere in the jail at the time of the attack.

erroneous statement by a counseling agency that she had threatened to kill a counselor, asserting that the purported threat was later "deemed non-credible . . ." *Id.* at ¶119. She alleges that while in custody, she was "constantly" terrorized by other inmates; her cell sink was broken for more than one month, causing her to lose "several teeth;" was not given saline solution for her contact lenses, resulting in eye infections; and served "tasteless, sodium-enriched, starchy and basically unhealthy food." *Id.* at ¶177. She asserts that prison guards hindered her ability to access the jail's legal library. *Id.*

Plaintiff alleges that her May 6, 2009 report to the Oakland County Prosecutor's Office of civil rights violations and "evidence of fraud" by complaining witnesses in the her criminal case went unanswered, *Id.* at ¶125, and that Defendants Jessica Cooper, Oakland County Prosecutor ("Cooper") and the assistant prosecutor assigned to Plaintiff's criminal case, Joanne Pray ("Pray") "deliberately and prejudicially proceeded to criminally prosecute" her despite "prima facie evidence" showing that the charges were fraudulent. *Id.* at ¶178. Plaintiff alleges further that Cooper and Pray "deliberately and prejudicially" ensured that she remained incarcerated by imposing "excessive, unconstitutional bail . . ." *Id.* at ¶176. She alleges further that between February 20, 2009 and June 5, 2009, she was deliberately and strategically "deprived" of defense counsel. *Id.* at ¶148.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether,

as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 676 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

556 U.S. at 679 (internal citations omitted).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. ANALYSIS

#### A. Defendants Cooper and Pray

"Judges and prosecutors have long been held to be absolutely immune from being sued on account of their judicial or prosecutorial acts." *Cullinan v. Abramson,* 128 F.3d 301, 307-308 (6th Cir.1997); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* 509 U.S. 259, 260, 113 S.Ct. 2606, 2608-2609, 125 L.Ed.2d 209 (1993). However, prosecutors "acting not as advocates but investigators ... would be entitled to only qualified immunity." *Id.* at 260, 2609.

Pursuant to *Buckley,* claims against Pray, taken as true, fall squarely within her role as advocate for the State and are thus barred by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 130, 118 S.Ct. 502, 509 - 510, 139 L.Ed.2d 471 (1997)("determination that the evidence was sufficiently strong to justify a probable-cause finding," as well as "decision to file charges" and "presentation of the information and the motion to the court" all protected by absolute immunity). Whether Cooper, in her role as Oakland County Prosecutor, had any

-5-

personal involvement in the criminal case is of no import given that the grant of absolute immunity is extended to a supervising prosecuting attorney. *Van de Kamp v. Goldstein* 555 U.S. 335, 348, 129 S.Ct. 855, 863-864, 172 L.Ed.2d 706 (2009)(citing *Imbler, supra*).

Under Michigan law, Cooper is also entitled to absolute immunity from suit in her role as the Oakland County Prosecutor. *Payton v. City of Detroit,* 211 Mich.App. 375, 394, 536 N.W.2d 233, 242 (1995); M.C.L. 691.1407(5)[2]. As the assistant prosecutor assigned to try Plaintiff's criminal case, Pray is immune from Plaintiff's state claims of First Amendment violations, malicious prosecution, abuse of process, conspiracy, and the negligent infliction of emotional distress ("NIED"). "[W]here a prosecutor's actions are within the scope of his prosecutorial functions and duties, his acts are quasi-judicial in nature and he has absolute immunity regarding the performance of those functions and duties". *Payton v. Wayne County,* 137 Mich.App. 361, 370-371, 357 N.W.2d 700, 704 (1984)(citing *Davis v. Eddie,* 130 Mich.App. 284, 286, 343 N.W.2d 11, 13 (1983)).

### B. Defendant Bouchard

Because Plaintiff has failed to make plausible allegations of personal involvement by Bouchard, claims against the Oakland County Sheriff must be dismissed. Plaintiff claims that over the course of her incarceration, the sink in her cell was broken for over a month, she was exposed to threats by mentally unstable inmates, denied saline solution for her contact

---

[2]

Under M.C.L. 691.1407(5), "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Cooper's position as a county prosecutor entitles her to such immunity. *See Bischoff v. Calhoun County Prosecutor* 173 Mich.App. 802, 806, 434 N.W.2d 249, 251 (Mich.App.1988)

lenses (resulting in an eye infection) and denied access to the prison's law library. *Plaintiff's Second Amended Complaint* at ¶177. She alleges that the decision to place her in maximum security exposed her to violent and mentally unstable individuals was attributable to Bouchard. *Id.* at ¶115. She faults Bouchard for failing to include her among the prisoners released due to prison overcrowding. *Id.* at ¶118.

However, Plaintiff has made no *plausible* allegation that Bouchard was personally involved in any of the alleged violations of her civil rights. In a § 1983 action, liability cannot be based on a theory of *respondeat superior,* or mere supervisory liability. *Monell v. Department of Social Services.,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) At a minimum, a § 1983 plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984). Even assuming that Plaintiff's allegations of tasteless food, a broken sink, the threat of violence, and the inability to access the law library can be construed to state constitutional violations, she does not allege that Bouchard personally approved of or was even aware of the perceived deprivations.

Finally, because allegations against Bouchard concern activity within the course and scope of his employment, he is entitled to absolute immunity as the highest elected official within the Oakland County Sheriff's Department. M.C.L. 691.1407(5). As such, the state tort claims against him are barred.

### C. Defendant Oakland County Jail is Also Subject to Dismissal

#### 1. The Oakland County Jail is Not a Suable Entity

"It is well established that 'a county jail is not a suable entity within the meaning of

42 U.S.C. § 1983.'" *Jones v. Lee,* 2012 WL 683362, *2 (E.D.Mich. 2012)(Komives, M.J.)(citing *Gross v. Evans,* No. 06–CV–13065, 2006 WL 2419195, at *2 (E.D.Mich. Aug.22, 2006) (Zatkoff, J.)).

### 2. The Alleged Constitutional Violations Cannot be Attributed to a County Policy

Even assuming that Plaintiff's had properly directed her claims against Oakland County, she has made no plausible claim that the fact that her sink went unrepaired for over a month or the denial of saline solution was done pursuant to any policy or custom, or that the County participated in, knew of, authorized, or otherwise condoned the acts in question. As such, the municipal claims are dismissible on that basis. *Monell, supra,* 436 U.S. at 690–692, 98 S.Ct. 2035-2036 (for there to be municipal liability under § 1983, the alleged unconstitutional violation must implement or execute a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers, or be taken pursuant to governmental custom). To the extent Plaintiff alleges wrongdoing by individual jail personnel, the County is entitled to immunity from liability for the intentional torts of its employees. *Payton v. City of Detroit,* 211 Mich.App. 375, 393, 536 N.W.2d 233, 241- 242 (1995); M.C.L. 691.1407(1).

### 3. Plaintiff Has Not Pled Constitutional Violations by Jail Employees

To the extent that Plaintiff's allegations that she was improperly classified as a "high risk" inmate or the allegations that she was threatened by other inmates could be imputed to Oakland County policy, the underlying claims regarding prison conditions and access to the courts do not state claims of constitutional magnitude. Thus, the municipal claims are also dismissible for this reason as well. "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."

*Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001)(citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

Plaintiff's claim that improper placement in the jail's maximum security unit exposed her to threats by other inmates is analyzed under an Eighth Amendment paradigm. While a pretrial detainee's rights are based on the Fourteenth Amendment's Due Process Clause, they are analogous to the Eighth Amendment rights of prisoners. *Barber v. City of Salem, Ohio,* 953 F.2d 232, 235 (6th Cir.1992). *See Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985)(Eighth Amendment rights extended to pretrial detainees in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial").

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement," including "reasonable measures to guarantee the safety of the inmates." *Spencer v. Bouchard* 449 F.3d 721, 727 (6th Cir.2006); *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 128 L.Ed.2d 811 (1994)(internal citations omitted). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 833, 114 S.Ct. at 1976. However, to establish an Eighth Amendment claim of deliberate indifference, "the plaintiff must allege facts which, if true, would show that the official being sued perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Linden v. Washtenaw County,* 167 Fed.Appx. 410, 416 (6th Cir.2006)(unpublished); *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir.2001).

First, Plaintiff's claim that she was improperly placed in the maximum security section of the jail is defeated by an inmate classification notice stating that she was placed in medium, not maximum security. *Defendants' Exhibit D.* Even so, a prisoner does not

have a protected liberty interest in the procedures affecting her classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The fact that Plaintiff was a pretrial detainee rather than a convicted prison at the time of the alleged misfeasance does not change the analysis. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish,* 441 U.S. 520, 546-547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447(1979).

Second, Plaintiff's allegations that she was placed in apprehension of physical harm by other prisoners or that she experienced psychological trauma does not state a claim of constitutional magnitude. "'However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is [a] reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment.'" *Wilson v. Yaklich,* 148 F.3d 596, 601 (6th Cir. 1998)(citing *Babcock v. White,* 102 F.3d 267, 272 (7th Cir.1996)). Plaintiff does not allege that she was assaulted or otherwise physically harmed by another inmate during the course of her incarceration. Her claim that her jail experience caused psychological harm, by itself, does not rise to the level of a constitutional violation. "[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities.'" *Babcock*, at 272 (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

Third, Plaintiff's allegation that prison staff failed to fix the broken sink in her cell for over a month does not state a claim of constitutional magnitude. *Singleton v. Alvin S. Glenn Detention Center,* 2011 WL 5150076, *3 (D.S.C.2011)("[W]hile Plaintiff was

inconvenienced by the broken sink, he fails to show a deprivation of any basic human need . . ."). Plaintiff's specious claim that she lost "several" teeth because her cell sink was broken is defeated by her failure to allege she was unable to obtain drinking water in the restrooms or at meals at any point in her incarceration. *Johnson v. Commissioner of Correctional Services,* 699 F.Supp. 1071, 1074 (S.D.N.Y. 1988)(broken cell sink, while inconvenient, did not prevent Plaintiff from receiving water at meals). Likewise, her allegation that she was not provided with contact lense solution must be dismissed. *Davidson v. Scully,* 2001 WL 963965, *7 (S.D.N.Y. 2001)("inadequate supply of proper lens cleaners, disinfectants and eye lubricants," caused "eye infection, discomfort, cloudy vision, irritation, and less than sharp acuity" did not allege Eighth Amendment violation).

Finally, because Plaintiff obtained appointed counsel in her criminal case, the allegation that she was denied access to the law library does not state a First Amendment access to the courts claim. The Sixth Circuit has held that when a prisoner is offered the assistance of a court-appointed lawyer, as here, "[the] constitutionally-guaranteed right of access to the courts has been protected." *Portis v. St. Clair County,* 2011 WL 6003918, *2 (E.D.Mich.,2011)(Murphy, J.)(citing *Holt v. Pitts,* 702 F.2d 639, 640 (6th Cir.1983)). While Plaintiff makes a separate allegation that she was denied counsel between February 20 and June 5, 2009, *Plaintiff's Second Amended Complaint* at ¶148, this claim is directly contradicted by evidence already provided to the Court showing that she was represented by Martin Krohner between February 27 and June 10, 2009. *See Docket #33, Exhibits 1-3.*

### D. Official Capacity Claims

Finally, Defendants argue that claims brought against them in their official capacities should be dismissed. They are correct that claims against them in their official capacities, *i.e,* in their capacity as agents of the state under 42 U.S.C. § 1983, are subject to dismissal

-11-

on the basis that "[t]he United States Supreme Court has specifically held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Price v. Caruso,* 451 F.Supp.2d 889, 902 (E.D.Mich.2006) (Friedman, J.); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As such, Plaintiff is not entitled to monetary damages against any of these individuals in their official capacities.

Eleventh Amendment immunity "does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law," *Ernst v. Rising,* 427 F.3d 351, 358–359 (6th Cir.2005); *Ex parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). However, Plaintiff's request for injunctive relief (more specifically declaratory relief) that "her prolonged, illegal detention" violated the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments is obviated by her failure to show constitutional violations by present Defendants. As such, claims against these Defendants in their official capacities should be dismissed.

### IV.   CONCLUSION

For these reasons, I recommend that Defendants' motion [Docket #58] be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: July 30, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 30, 2012.

| | |
|---|---|
| M Amelia (Neal) Jermano<br>PO Box 58<br>Birmingham, MI 48012-0058 | s/Johnetta M. Curry-Williams<br>Case Manager |