UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


M. AMELIA (NEAL) JERMANO,                    Case No. 11-10739

              Plaintiff,                    District Judge Avern Cohn

v.                                           Magistrate Judge R. Steven Whalen

TROY TAYLOR, ET AL.,

              Defendants.

                                                   /

## REPORT AND RECOMMENDATION

Before the Court is Defendants Common Ground (FKA Common Ground Sanctuary), Shawn Force and Melissa Felice's *Motion for Judgment on the Pleadings* [Dock. #64] filed February 17, 2012, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

### I.  BACKGROUND

Plaintiff filed a *pro se* civil complaint on February 23, 2011, naming 48 Defendants in 25 counts, including the Oakland County Prosecutor, the Oakland County Sheriff, an assistant prosecutor, and members of the Oak Park and Troy, Michigan police departments. Her second amended complaint, filed April 29, 2011, pertains to the alleged actions of various police officers and agencies, and a state criminal action against her for violating a PPO and aggravated stalking. She alleges violations of her constitutional rights pursuant to

42 U.S.C. §§ 1983, 1985 and 1986, violations of various federal criminal statutes and a number of state law claims. *Docket #11.*

On January 21, 2009, Defendant Anna Magner, Plaintiff's former psychological counselor, petitioned for a PPO on the basis that Plaintiff had been calling her 15 times a day at work, and 50 to 60 times on her cell phone, threatening bodily harm and the destruction of Magner's career. *Docket #11-2,* pg. 15-16.  Between April, 2008 and January, 2009, Defendant Magner contacted the Oak Park, Michigan Police Department 13 times as a result of Plaintiff's harassment. *Docket #11-1,* pg. 37 of 50.  Plaintiff alleges that on February 20, 2009 while driving through Troy, Michigan, she was arrested following a traffic stop, based on an outstanding warrant for violating the PPO.  *Second Amended Complaint* at ¶105. Following the February 20, 2009 arrest, Plaintiff was detained at the Oakland County Jail for 228 days before the PPO and aggravated stalking charges were dismissed.  *Id.* at ¶177(p).

Common Ground Sanctuary ("Common Ground"), a non-profit agency, provides round-the-clock psychological crisis intervention by telephone.  The parties do not dispute that after Magner terminated her professional relationship with Plaintiff in May, 2008, Plaintiff contacted Common Ground on several occasions in July, 2008.  An exhibit attached to Plaintiff's amended response to the present motion, shows that on July 22, 2008, Melissa Felice ("Felice"), a counselor employed by Common Ground, took a call from Plaintiff at 4:42 p.m. *Docket #78,* pg. 41 of 43.  Plaintiff was classified as an "old" (returning) client. *Id.*  Call notes from the conversation state that Plaintiff felt that Magner had betrayed her by

terminating her as a client at a time when Plaintiff was experiencing both legal and domestic problems. *Id.* at pg. 42. The call notes also state that Plaintiff felt "manipulated, emotionally abused, and damaged because of [Magner]." *Id.* According to the call notes, Plaintiff then said that she "wants to get a [unreadable] then they will see what dangerous means." *Id.* The call notes indicate that Plaintiff's former girlfriend was currently filing "violence-related [unreadable] against [Plaintiff]." *Id.* A "lethality assessment," evidently completed by Felice and included with her call notes, states that Plaintiff was deemed a "moderate/high" risk based on her ability to articulate "some specifics" of a homicidal plan; anxiety, depression, and/or hostility; and social isolation and/or loss of contact with reality. *Id.* at 41-42.

Plaintiff alleges that Common Ground, Felice, and Shawn Force ("Force"), also an employee of Common Ground, "breached" her confidentiality by reporting privileged conversations to Magner and ultimately, the police. *Second Amended Complaint* at ¶161. She alleges further that the call report mischaracterized her communications with Common Ground, denying that she expressed an intent to harm Magner. *Id.* at ¶162. Plaintiff asserts that by submitting a false report to authorities, these Defendants defamed her "good character and reputation." *Id.* at ¶163. She alleges that present Defendants, motivated by homophobic prejudice, conspired with Magner along with various enforcement agencies to falsely accuse her of committing a crime, leading to deprivation of her constitutional and statutory rights. *Id.*

## II.  STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) of the Federal

Rules of Civil Procedure is subject to the same standards of review as a Rule 12(b)(6) motion

to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*,

133 F.3d 416, 421 (6th Cir.1998).   Fed.R.Civ.P. 12(b)(6) provides for dismissal of a

complaint "for failure of the pleading to state a claim upon which relief can be granted."

Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters

outside the pleadings are presented to and not excluded by the court, the motion shall be

treated as one for summary judgment and disposed of as provided in Rule 56 (summary

judgment)."  In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual

allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.

*Rippy v. Hattaway,* 270 F.3d 416, 419 (6ᵗʰ Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a

complaint contains factual allegations, as opposed to legal conclusions.  *Ashcroft v. Iqbal*,

556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, 556 U.S.

at 676 (citing  *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-

1965, 167 L.Ed.2d 929 (2007)).   Second, the facts that are pled must show a "plausible"

claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as
> the Court of Appeals observed, be a context-specific task that requires the

> reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

556 U.S. at 679 (internal citations omitted).

## III. ANALYSIS

### A. 42 U.S.C. § 1983

Counts I through V, VII, and XII of the *Second Amended Complaint* allege constitutional violations pursuant to § 1983.   However, because Plaintiff has failed to make a plausible claim that present Defendants were acting under color of law during the course of the alleged events, the constitutional claims must be dismissed. *Id.* at 4.

Under § 1983, an alleged deprivation of right guaranteed by the Constitution or laws of the United States must be done under color of State law or regulation. 42 U.S.C. § 1983. A "state action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)(emphasis in original)(quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).   "The Sixth Circuit has three tests for state action: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test."

*Bormuth v. Dahlem Conservancy,* 837 F.Supp.2d 667, 671 (E.D.Mich. 2011)(Steeh, J.)(citing*Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000); *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir.1995); *Wolotsky v. Huhn,* 960 F.2d 1331 (6th Cir.1992)).

Defendants argue that "[a]t no point in time" were they acting under color of law "while operating or being employed at [a] non- profit crisis helpline center." *Defendants' Brief,* 3, *Docket #64.* Plaintiff does not appear to argue that Defendants are liable under either the public function or state compulsion test. Rather, she seems to contend that because either Force or Felice reported her alleged threats against Magner to the authorities, a symbiotic relationship existed between Defendants and state actors. However, "[p]roviding information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken under color of law." *Moldowan v. City of Warren,* 578 F.3d 351, 399 (6th Cir. 2009)(internal punctuation omitted).

### B. Conspiracy

Plaintiff's conspiracy claims must be analyzed separately. Private individuals engaged in a conspiracy for the deprivation of constitutional rights with state actors are deemed acting "under color of law" for purposes of section 1983 actions. *Macko v. Bryon,* 641 F.2d 447, 449-50 (6th Cir.1981). Plaintiff's allegations that present Defendants made false reports about her as part of a conspiracy motivated by anti-homosexual prejudice are construed pursuant to 42 U.S.C. § 1985(3), which "prohibits a conspiracy 'for the purpose

of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.'" *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 314 (6th Cir.2005); 42 U.S.C. § 1985. To maintain a cause of action under a § 1985 claim, "one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Radvansky,* 395 F.3d at 314 (6th Cir.2005)(internal citations omitted).  In addition, the claimant must demonstrate "'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Id.* (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

Here, Plaintiff's allegations that the Common Ground Defendants acted with discriminatory animus based on her sexual orientation does not state a § 1985(3) claim. "[H]omosexuals are not a protected class for purposes of 42 U.S.C. § 1985(3)." *Preston v. Hughes,* 178 F.3d 1295, 1999 WL 107970, at *1 (6th Cir .1999)(unpublished); *Vega v. Artus,* 610 F.Supp.2d 185, 204 -205 (N.D.N.Y. 2009)(same).  Even assuming that Plaintiff had sufficiently alleged membership in a protected class, the fact that Common Ground employees reported Plaintiff's alleged threats to the intended victim and law enforcement agencies does not show that they engaged in a conspiracy.  To the contrary, in reporting

-7-

Plaintiff's alleged threat to Magner and the applicable authorities, the Common Ground

Defendants were discharging their "duty to warn" under M.C.L. § 330.1946, which provides

(1) "If a patient communicates to a mental health professional who is treating the patient a

threat of physical violence against a reasonably identifiable third person and the recipient has

the apparent intent and ability to carry out that threat in the foreseeable future, the mental

health professional has a duty to" to timely (2)(a) initiate commitment proceedings [or] (b)

make "a reasonable attempt to communicate the threat to the third person" and report the

threat to the appropriate authorities.  The fact that Plaintiff alleges that the release of the call

report led to her classification as a high security risk during her incarceration does not

override Defendants' duty to report possible threats to Magner's safety.

Setting aside present Defendants' duty to warn, the fact that one or more of the

Common Ground Defendants reported Plaintiff's alleged threats to the intended victim or

provided police with the call report does not state a plausible claim under § 1983 or state law

that they conspired to deprive her of her constitutional or statutory rights.  "In this circuit,

'[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and

that vague and conclusory allegations unsupported by material facts will not be sufficient to

state such a claim under § 1983.'" *Moldowan, supra,* 578 F.3d at 395 (citing *Gutierrez v.

Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987)).

The conspiracy claim would require the Court to believe that Magner terminated her

as a client in May, 2008, then falsely reported to the Oak Park Police that Plaintiff was

harassing her. *Docket #11-1,* pg. 37 of 50.   Although Magner's reports of harassment predated Plaintiff's July, 2008 calls to Common Ground, one would be required to accept further that one or more of present Defendants, acting in concert with Magner, took the opportunity afforded by Plaintiff's multiple telephone calls to Common Ground in July, 2008 to report falsely that Plaintiff had made threats of violence against Magner.  Plaintiff does not allege that any of the Common Ground Defendants knew of Magner's existence (much less conspired with her) at the time the threat was reported.  One would also be required to ignore evidence showing that Plaintiff also sent Magner letters and otherwise attempted to contact her on numerous occasions before the January, 2009 PPO was issued.  While Plaintiff alleges trivial inconsistencies in Magner's numerous police complaints, the same evidence shows that Magner reported incidents of harassment by Plaintiff  before and well after the July, 2008 Common Ground call report was revealed. *Docket #11-2,* pg.12 of 25.   For example, Plaintiff does not deny that she banged on Magner's door, trespassed in Magner's backyard, or other acts which would have constituted independent grounds for a stalking charge.  *Id.* at pg. 16.   Plaintiff's contention that because one of the circuit court judges involved in her criminal case sat on Common Ground's board of directors demonstrates the existence of a conspiracy is likewise without merit, given that Common Ground's release of its call report predated the filing of criminal charges by seven months.

Somewhat confusingly, while Plaintiff asserts that Magner and the Common Ground Defendants acted in concert to have her prosecuted, she seems to suggest that the faxing of

the call report to Magner's office in July, 2008 precipitated Magner's decision to contact authorities. *Id.* pg. 2 of 25. This assertion is inconsistent with the claim that Magner and the Common Ground Defendants acted in concert to damage Plaintiff's reputation or subject her to criminal charges. To the contrary, Magner's sworn testimony does not support the claim that she conspired with Common Ground to concoct a false report, but rather, received Common Ground's call report with alarm and concern for her own safety. *Id.*

## C. Claims Brought Under Title 18 of the United States Code

Plaintiff's claims of criminal misfeasance against Defendants must also be dismissed. None of the statutes she relies upon, 18 U.S.C. §§ 4, 211, 242, 1512, 1001, 1505, 1506, 249, contains a private cause of action. *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 386 (6th Cir.1997)**.** Moreover, as a private citizen, Plaintiff "has no authority to initiate a federal criminal prosecution of the defendants for their alleged unlawful acts." *Kafele v. Frank & Wooldridge Co.,* 108 Fed.Appx. 307, 308-309, 2004 WL 1859348, *2 (6th Cir. 2004)(citing *Diamond v. Charles,* 476 U.S. 54, 64-65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)). As such, all claims brought under Title 18 of the United States Code should be dismissed.

## D. State Claims

Although Plaintiff's allegations are often difficult to follow, her response to the present motion states that the state law claims against the Common Ground Defendants are

limited to malicious abuse of process, intentional infliction of emotional distress.  *Docket #71,* 10.

To recover pursuant to a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding." *Bonner v. Chicago Title Ins. Co.,* 194 Mich.App. 462, 472–473, 487 N.W.2d 807, 812–813 (Mich.App.1992).   Consistent with the above discussion,  Plaintiff has not made a plausible claim that the Common Ground Defendants had an ulterior purpose in releasing the call report but to the contrary, were discharging their duty warn by notifying Magner of the threats against her.  For overlapping reasons,   the claims of intentional infliction of emotional distress ("IIED") must be dismissed.  To establish a claim of IIED a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford,* 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). Plaintiff cannot show that the alleged actions were unreasonable, much less outrageous.  Likewise, she fails to make a plausible claim that Defendants released the call report with the intention of causing her emotional distress.  While Plaintiff lumps in a claim against these Defendants under the Michigan Consumer Protection Act ("MCPA") for releasing the call report, Defendants' actions as either counselors or psychologists is authorized by a state regulatory board.  Thus, they are exempt from the requirements of the MCPA.  M.C.L. § 445.904(1).

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' motion [Docket #64] be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: July 31, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 31, 2012.


M Amelia (Neal) Jermano                    s/Johnetta M. Curry-Williams
P.O. Box 58                                Case Manager
Birmingham, MI 48012