UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M. AMELIA (NEAL) JERMANO,                   Case No. 11-10739

          Plaintiff,                        District Judge Avern Cohn

v.                                          Magistrate Judge R. Steven Whalen

TROY TAYLOR, ET AL.,

          Defendants.

_____ /

## REPORT AND RECOMMENDATION

Before the Court is Defendants YWCA of Metropolitan Detroit, Pamela McCormick, Sandra Jones-Karim and Curtis France's Motion for Judgment on the Pleadings [Dock. #96], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing these Defendants WITH PREJUDICE.

### I.  BACKGROUND

Plaintiff M. Amelia (Neal) Jermano ("Plaintiff") filed a *pro se* civil complaint on February 23, 2011, naming 48 Defendants in 25 counts, including members of the Oak Park and Troy, Michigan police departments and present Defendants, YWCA of Metropolitan Detroit ("YWCA"), Pamela McCormick ("McCormick") Sandra Jones-Karim ("Jones-Karim"), and Curtis France ("France").  Plaintiff's second amended complaint, filed April 29, 2011, pertains to the alleged actions of various police officers and agencies, and a state

-1-

criminal action against her for violating a PPO and aggravated stalking.  She alleges

violations of her constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986,

violations of various federal criminal statutes and a number of state law claims.  *Docket #11.*

On January 21, 2009, Defendant Anna Magner, Plaintiff's former psychological

counselor, petitioned for and was granted a PPO on the basis that Plaintiff had been calling

her 15 times a day at work, and 50 to 60 times on her cell phone, threatening bodily harm and

destruction of her career.  *Docket #11-2,* pg. 15-16.  According to the petition, between

April, 2008 and January, 2009, Defendant Magner contacted the Oak Park, Michigan Police

Department 13 times as a result of Plaintiff's harassment. *Docket #11-1,* pg. 37 of 50.

Plaintiff alleges that on February 20, 2009 while driving through Troy, Michigan, she was

arrested following a traffic stop, based on an outstanding warrant for violating the PPO.

*Second Amended Complaint* at ¶105.  Following the February 20, 2009 arrest, Plaintiff was

detained at the Oakland County Jail for 228 days before the aggravated stalking charges were

dismissed.  *Id.* at ¶177(p).

Plaintiff's claims against present Defendants are set forth in paragraphs 165-168 of

the *Second Amended Complaint*:

> ¶ 165.  Defendants France, Karim, McCormick and Magner and YWCA
> jointly aided and abetted in the obstruction of justice when they condoned the
> creation and assertion of [] falsified inter-office memos that reported false
> claims of [Plaintiff] making harassing phone calls to Defendant Magner at her
> place of work - YWCA Interim House, that they knew to be false at the time.

> ¶ 166.  Defendants McCormick and Magner and YWCA Interim House of
> Metro Detroit, jointly aided and abetted in the obstruction of justice when they
> condoned the creation and assertion of [] falsified inter-office memos that

reported false claims of [Plaintiff] making harassing phone calls to Defendant Magner at her place of work - YWCA Interim House that they knew to be false at the time.

¶ 167.  France, Karim, McCormick and YWCA Interim House of Metro Detroit, jointly conspired to falsely accuse another of a crime (the Plaintiff []) contrary to M.C.L. 750.157 by creating false inter-office memos for use in the malicious prosecution of [Plaintiff] that they knew to be false at the time.

¶ 168.  Defendants McCormick and Magner and YWCA Interim House of Metro Detroit, jointly breached the confidentiality of [Plaintiff] in violation of the Michigan Consumer Protection Act 133 of 1976 - 445.903(bb), (cc) and (jj) which prohibits unfair, unconscionable or deceptive methods, acts or practices in conduct of trade or commerce.

## II.  STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) of the Federal Rules of Civil Procedure is subject to the same standards of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998).

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)."  In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 676 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

556 U.S. at 679 (internal citations omitted).

## III.  ANALYSIS

To begin with, the claim that present Defendants created false "inter-office memos" does not state a claim upon which relief can be granted. *See Iqbal*, 556 U.S.at 679. However, the *Second Amended Complaint,* cobbled together with Plaintiff's response to the present motion and her previous pleadings, appears to allege that these Defendants, along with other counseling agency personnel, *See Docket #64,* reported Plaintiff's alleged threats against Magner to authorities, resulting in Plaintiff's incarceration for violating a PPO.

Given a liberal construction, claims against these Defendants are nonetheless subject to dismissal.

-4-

**A.  42 U.S.C. § 1983**

Counts I through V, VII, and XII of the *Second Amended Complaint* allege

constitutional violations pursuant to § 1983.  Present Defendants state that the § 1983 claims

should be dismissed because at no time during the events in question were any of them acting

under "color of law."  *Defendants' Brief* at 4.  Because Plaintiff has failed to make a

plausible claim that present Defendants were acting under color of law during the course of

the alleged events, the constitutional claims must be dismissed.

Under § 1983, an alleged deprivation of right guaranteed by the Constitution or laws

of the United States must be done under color of State law or regulation. 42 U.S.C. § 1983.

A "state action requires *both* an alleged constitutional deprivation 'caused by the exercise of

some right or privilege created by the State or by a rule of conduct imposed by the State or

by a person for whom the State is responsible,' *and* that 'the party charged with the

deprivation must be a person who may fairly be said to be a state actor.'" *American Mfrs.*

*Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)(emphasis

in original)(quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73

L.Ed.2d 482 (1982)).  "The Sixth Circuit has three tests for state action: (1) the public

function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test."

*Bormuth v. Dahlem Conservancy,* 837 F.Supp.2d 667, 671 (E.D.Mich. 2011)(Steeh,

J.)(citing*Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000); *Ellison v. Garbarino,*

48 F.3d 192, 195 (6th Cir.1995); *Wolotsky v. Huhn,* 960 F.2d 1331 (6th Cir.1992)).

Plaintiff does not allege that Defendant YWCA, a non-profit organization, and its

Defendant employees are liable under either the public function or state compulsion test. Her response to the present motion seems to allege that present Defendants violated her rights by communicating her alleged threats against Magner to a law enforcement agency. *Plaintiff's Response* at 11-20, *Docket #102.* Defendants appear to concede that they passed along Plaintiff's threats against Magner to the authorities, but note they made the reports as required by M.C.L. § 330.1946. *Reply,* at 3, *Docket #103.* However, reporting Plaintiff's threats does not sufficiently allege a symbiotic relationship between Defendants and state actors. "Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken under color of law." *Moldowan v. City of Warren,* 578 F.3d 351, 399 (6th Cir. 2009)(internal punctuation omitted). Defendants are correct that because they were not acting under color of law, the Eighth Amendment allegations, brought pursuant to § 1983 should be dismissed.

### B.  Conspiracy Claims

Plaintiff's claim that present Defendants "aided and abetted in the obstruction of justice" is construed as a conspiracy claim pursuant to 42 U.S.C. § 1985(c). In contrast to § 1983 claims, private individuals engaged in a conspiracy for the deprivation of constitutional rights with state actors are deemed acting "under color of law" for purposes of § 1983 actions. *Macko v. Bryon,* 641 F.2d 447, 449-50 (6th Cir.1981). Plaintiff seems to allege that Defendants made false reports about her as part of a conspiracy motivated by anti-homosexual prejudice in violation of 42 U.S.C. § 1985(3) which "prohibits a conspiracy 'for

the purpose of depriving either directly or indirectly, any person or class of persons of the

equal protection of the laws or of equal privileges and immunities under the laws.'"

*Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 314 (6th Cir.2005); 42 U.S.C. § 1985. To

maintain a cause of action under a § 1985 claim, "one must prove (1) a conspiracy; (2) for

the purpose of depriving, either directly or indirectly, any person or class of persons of the

equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in

furtherance of the conspiracy; (4) whereby a person is either injured in his person or property

or deprived of any right or privilege of a citizen of the United States." *Radvansky,* 395 F.3d

at 314 (6th Cir.2005)(internal citations omitted).  In addition, the claimant must demonstrate

"'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind

the conspirators' actions.'" *Id.* (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct.

1790, 29 L.Ed.2d 338 (1971)).

Plaintiff's allegations that the present Defendants acted with discriminatory animus

based on her sexual orientation does not state a § 1985(3) claim. "[H]omosexuals are not a

protected class for purposes of 42 U.S.C. § 1985(3)." *Preston v. Hughes,* 178 F.3d 1295,

1999 WL 107970, at *1 (6th Cir.1999)(unpublished); *Vega v. Artus,* 610 F.Supp.2d 185, 204

-205 (N.D.N.Y. 2009)(same).  Even assuming that Plaintiff had sufficiently alleged

membership in a protected class, the allegation that Defendants reported Plaintiff's alleged

threats to the intended victim and law enforcement agencies does not show that they engaged

in a conspiracy.  To the contrary, in reporting Plaintiff's alleged threats against Magner to

the applicable authorities, Defendants were discharging their "duty to warn" under M.C.L.

§ 330.1946, which provides (1) "If a patient communicates to a mental health professional who is treating the patient a threat of physical violence against a reasonably identifiable third person and the recipient has the apparent intent and ability to carry out that threat in the foreseeable future, the mental health professional has a duty" to timely (2)(a) initiate commitment proceedings [or] (b) make "a reasonable attempt to communicate the threat to the third person" and report the threat to the appropriate authorities.

Even setting aside Defendants' duty to warn, the fact that one or more of Defendants reported Plaintiff's threats to the intended victim or provided police with a report does not state a plausible claim under § 1983 or state law that they conspired to deprive her of her constitutional or statutory rights. "In this circuit, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Moldowan, supra,* 578 F.3d at 395 (citing *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987)).

The conspiracy claim would require the Court to believe that Magner terminated Plaintiff as a client in May, 2008, then falsely reported to the Oak Park Police that Plaintiff was harassing her. *Docket #11-1,* pg. 37 of 50. One would also be required to believe that Magner cajoled present Defendants into creating false reports against Plaintiff and then submitting them to law enforcement. While Plaintiff alleges trivial inconsistencies in Magner's numerous police complaints, evidence shows that Magner reported incidents of harassment independent of present Defendants' report of threats against her. *Docket #11-2,*

pg.12 of 25.  For example, Plaintiff does not deny that she banged on Magner's door, trespassed in Magner's backyard, or other committed acts which would have constituted independent grounds for a stalking charge.  *Id.* at pg. 16.  Plaintiff's failure to allege a violation of § 1985 also moots the 42 U.S.C. § 1986 claim that Defendants failed to prevent the commission of a conspiracy.

### C.  Fifth Amendment Claims

The Fifth Amendment protection against self-incrimination does not apply to non-custodial statements made voluntarily to private citizens. *See Talley v. Feldman,* 941 F.Supp. 501, 512 (E.D.Pa.1996) ("It is well settled that the First and Fifth Amendment of the Constitution 'apply to and restrict only the Federal Government and not private persons' ") (quoting *Public Utils. Comm'n of D.C. v. Pollak,* 343 U.S. 451, 461–62, 72 S.Ct. 813, 96 L.Ed. 1068 (1952*)*; *Smith v. Goord*, 412 F.Supp.2d 248, 252 (W.D.N.Y. 2006) ("The purely private acts of private citizens do not implicate the Fourth, Fifth and Sixth Amendments, all of which were meant to regulate government activity"); *United States v. Romero*, 897 F.2d 48, 52 (2d Cir. 1990)("*Miranda*[1] does not apply to incriminating statements made to private persons.").

### D.  Claims Brought under Title 18 of the United States Code and the State  Penal Code

Plaintiff's claims of criminal misfeasance against Defendants must also be dismissed. None of the statutes cited by Defendants (18 U.S.C. §§ 4, 241, 242, 1512(d)(2), 242, 1513,

---

[1] *Miranda v. Arizona,* 384 U.S. 436,  86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

1001, 1505, 1506, 249(a)(2)) contains a private cause of action. *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 386 (6th Cir.1997)**.** Moreover, as a private citizen, Plaintiff "has no authority to initiate a federal criminal prosecution of the defendants for their alleged unlawful acts." *Kafele v. Frank & Wooldridge Co.,* 108 Fed.Appx. 307, 308-309, 2004 WL 1859348, *2 (6th Cir. 2004)(citing *Diamond v. Charles,* 476 U.S. 54, 64-65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)).  As such, all claims brought under Title 18 of the United States Code should be dismissed.  Likewise, Plaintiff's claims under Michigan's penal code, M.C.L. § § 750.411h, 750.411i, 750.81, 750.81d do not provide a private cause of action and are also subject to dismissal.  "[G]enerally, where a statute contains criminal penalties for violations of its provisions . . . no private cause of action based on alleged violations of the statute will lie."  *Patton v. Village of Cassopolis,* 2012 WL 205832, *5 (January 24, 2012)(citing *Lane v. KinderCare Learning Ctrs Inc,* 231 Mich.App 689, 699; 588 NW2d 715 (1998)); *Lowell R. Fisher v. WA Foote Memorial Hosp,* 261 Mich.App 727, 730; 683 NW2d 248 (2005).

### E.  Other State Claims

Although Plaintiff's allegations are often difficult to fathom, her response to the present motion states that the state law claims against present Defendants also include malicious abuse of process and intentional infliction of emotional distress. *Docket #102,* at 36.

To recover under a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding." *Bonner v. Chicago Title Ins. Co.,* 194 Mich.App. 462,

472–473, 487 N.W.2d 807, 812–813 (1992). Consistent with the above discussion, Plaintiff

has not made a plausible claim that these Defendants had an ulterior purpose in reporting her

threats, but to the contrary, were discharging their duty to warn under M.C.L. § 330.1946.

For overlapping reasons, the claims of intentional infliction of emotional distress ("IIED")

must be dismissed. To establish a claim of IIED a plaintiff must show "(1) extreme and

outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional

distress." *Graham v. Ford,* 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). Plaintiff

cannot show that the alleged actions were unreasonable, much less outrageous. This claim

is also defeated by her failure to make a plausible claim that Defendants made a report to

authorities with the intention of causing her emotional distress.

While Plaintiff also includes a claim against these Defendants under the Michigan

Consumer Protection Act ("MCPA") for releasing the confidential information, Defendants'

actions as either counselors or psychologists is authorized by a state regulatory board. Thus,

they are exempt from the requirements of the MCPA. *See* M.C.L. § 445.904(1).

## IV.   CONCLUSION

For these reasons, I recommend that the Motion for Judgment on the Pleadings

[Docket #96] be GRANTED, dismissing these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days

of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                **s/ R. Steven Whalen**
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Date: February 28, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 28, 2013.

M Amelia (Neal) Jermano                    Johnetta M. Curry-Williams
PO Box 58                                   Case Manager
Birmingham, MI 48012-0058