UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M. AMELIA (NEAL) JERMANO,                    Case No. 11-10739

    Plaintiff,                                                  District Judge Avern Cohn

v.                                                                         Magistrate Judge R. Steven Whalen

TROY TAYLOR, ET AL.,

    Defendants.
                                          /

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Troy Taylor, Rachel Meyers, Eric Zarfl, Michael Pinkerton, Anthony Carignan, Shawn Tetier, John Stanson, Keith Hermans, "Officer SK," Jim Rourke, Chris Martinelli, Rob Wickham, James Hock, and City of Oak Park Police Department's *Motion to Dismiss and/or for Summary Judgment* [Dock. #82] filed May 3, 2012 which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

**I. BACKGROUND**

Plaintiff M. Amelia (Neal) Jermano ("Plaintiff") filed a *pro se* civil complaint on February 23, 2011, naming 48 Defendants in 25 counts, including members of the Oak Park and Troy, Michigan police departments. Plaintiff's second amended complaint, filed April 29, 2011, pertains to the alleged actions of various police officers and agencies, and a state criminal action against her for violating a PPO and aggravated stalking. She alleges violations of her constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, violations of various federal criminal statutes, and a number of state law claims. *Docket #11*.

Plaintiff's exhibits show that on January 21, 2009, Defendant Anna Magner, Plaintiff's former psychological counselor, petitioned for and was granted a PPO on the basis that between May, 2008 and January, 2009, Plaintiff had been calling her 15 times a day at work, and 50 to 60 times to her cell phone, threatening bodily harm and the destruction of her career. *Docket #11-2,* pg. 15-16 of 25. According to Oak Park police department records, in the months preceding the issuance of the January 21, 2009 PPO, Defendant Magner contacted the Oak Park, Michigan Police Department 13 times as a result of Plaintiff's harassment. *Docket #11-1,* pg. 37 of 50.

Plaintiff alleges that although Magner's fiancé, Defendant Kevin D'Angelo claims to have served the January 21, 2009 PPO, she denies ever receiving it. *Docket #11* at ¶¶65-66. Plaintiff claims that she was unaware that she was violating a PPO when she sent Magner nine dozen roses and a teddy bear on February 14, 2009. *Id.* at ¶64. Plaintiff alleges that on February 20, 2009, she was arrested following a traffic stop, based on the outstanding warrant for violating the PPO. *Id.* at ¶105. Following the February 20, 2009 arrest, Plaintiff was detained at the Oakland County Jail for 228 days before the aggravated stalking charges were dismissed. *Id.* at ¶177(p).

Plaintiff makes the following allegations against above individual Defendants, all employees of the City of Oak Park. She claims that Defendant Oak Park police officers Troy Taylor ("Taylor") and Rachel Meyers ("Meyers") participated in a "chain-link" conspiracy motivated in part by "homophobic" prejudice. *Id.* at ¶68. Plaintiff alleges that when Taylor and Meyers obtained a warrant for her arrest following the delivery of the roses and teddy bear, they were aware that Magner's claims of harassing phone calls were false. *Id.* at ¶69(a). She alleges that Taylor and Meyers were aware that she had not been served when they obtained the warrant for her arrest. *Id.* at ¶69(b-c). She alleges that Defendant Oak Park

police officers Eric Zarfl ("Zarfl") and Michael Pinkerton ("Pinkerton") falsely claimed that they observed roses and a teddy bear lying outside Magner's house on February 14, 2009 . *Id.* at ¶¶69(e-f), 139. She asserts that a receipt showing that the delivery was made on February 15, not February 14, proves that these Defendants' statements were false. *See Docket #82-2* at 80 of 115.

Plaintiff states that she was the victim of "fabricated police reports" consisting of "fictitious narratives by Magner" and various Oak Park police officers. *Second Amended Complaint* at ¶131. Plaintiff faults Defendant Oak Park police officers Rob Wickham ("Wickham") and "Bergman"[1] for taking Magner's reports of harassment at face value, adding that although these Defendants had Plaintiff's contact information, they never contacted her to verify Magner's claims. *Id.* at ¶132. She alleges that Defendant Oak Park police officer Chris Martinelli and officer Barker[2] also accepted Magner's unsupported claims of harassment. *Id.* at ¶133. Plaintiff also faults these individuals for accepting confidential reports of a counseling agency from whom she sought help. *Id.* at ¶133. She alleges that Defendant Oak Park police officers Keith Hermans ("Hermans"), "mystery officer SK" ("SK"), Jim Rourke ("Rourke"), and Myers uncritically accepted Magner's allegations of harassment despite the fact that Magner's claims were undermined by inaccurate statements. *Id.* at ¶¶134-135.

Plaintiff states that prior to the PPO's issuance on January 21, 2009, Defendant Oak Park police officers Anthony Carignan ("Carignan"), Shawn Tetler ("Tetler"), Taylor, and Matthew[3] also accepted Magner's "contradictory and unsubstantiated" claims. *Id.* at ¶138.

---

[1]The named Defendants do not include a "Bergman."

[2]The named Defendants do not include a "Barker."

[3]The named Defendants do not include a "Matthew."

She alleges that subsequent to the issuance of the PPO, Taylor aided D'Angelo in concealing that the PPO had not been properly served. *Id.* at ¶138(d-e). Plaintiff objects to a February, 2009 police report by Myers, Rourke, and Taylor characterizing her as mentally ill and "aggressive and abusive." *Id.* at ¶141. Plaintiff denies that she was "aggressive and abusive" stating instead that she "has months of receipts of flower gifts [bought] for Defendant Magner." *Id.* at ¶141(c). She alleges constitutional violations pursuant to 42 U.S.C. § 1983, violations of Title 18, and a number of state law claims.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 676 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

-4-

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief.

556 U.S. at 679 (internal citations omitted).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. ANALYSIS

#### A. Claims Brought Under Title 18 of the United States Code (Counts VIII-XII, XX-XXIII)

As noted in my previous recommendation, none of the statutes relied upon by Plaintiff in support of her claims of criminal misfeasance (18 U.S.C. §§ 4, 241, 242, 1512(d)(2), 1001, 1505, 1506, 249(a)(2)(A)) contain a private cause of action. *Docket #66* at 4. *See Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 386 (6th Cir.1997)**.** As a private citizen, Plaintiff "has no authority to initiate a federal criminal prosecution of the defendants for their alleged unlawful acts." *Kafele v. Frank & Wooldridge Co.,* 108 Fed.Appx. 307, 308-309, 2004 WL 1859348, *2 (6th Cir. 2004)(citing *Diamond v. Charles,* 476 U.S. 54, 64-65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)). As such, claims brought under Title 18 of the United States Code against these Defendants should be dismissed.

#### B. 42 U.S.C. § 1983 - Individual Capacity Claims (Counts III-IV)

The constitutional allegations against these Defendants are construed as claims of false arrest and malicious prosecution. "A plaintiff bringing a constitutional claim of false arrest under the Fourth Amendment must show that there was not probable cause for the arrest." *Stemler v. City of Florence,* 126 F.3d 856, 871 (6th Cir. 1997); *Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir.1997). The existence of probable cause also forecloses a constitutional claim of malicious prosecution which requires the plaintiff to show that "the defendants sought prosecution 'despite knowing that there was not probable cause to do so.'" *Stemler,* at 871-872 (citing *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Coogan v. City of Wixom,* 820 F.2d 170, 175 (6th Cir.1987)).

"Probable cause exists when the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Sussman v. Dalton,* 2012 WL 5874769, 4 (E.D.Mich. November 20, 2012)(Roberts, J.)(citing *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).

Although Plaintiff disputes Magner's allegations leading to the issuance of the PPO, the pertinent question here is limited to whether present Defendants believed that probable cause supported the conclusion that Plaintiff had violated the PPO on February 14, 2009 by sending flowers to Magner. The fact that a state district court judge found that probable cause existed for Plaintiff's arrest is irrelevant to this analysis. *Docket #82-2* at 90 of 115. In making the claims of false arrest and malicious prosecution, Plaintiff is not "attempting to relitigate the . . . issue of whether probable cause exists," but rather, argues that the Oak Park Defendants "misstated material facts in order to establish probable cause . . ." *Darrah v. City of Oak Park,* 255 F.3d 301, 311 (6th Cir. 2001).

A careful review of Defendants' exhibits shows that they had reason to believe a crime had been committed at the time the warrant was requested. The Court is mindful that with the benefit of hindsight, some question might have been raised as to whether Magner's fiancé properly served the PPO. In the hours following the January 21, 2009 3:15 p.m. issuance of the PPO, Magner attempted to provide the Oak Park police department with proof of service that the PPO had been served, *Docket #82-2,* at 20, 58 of 115, but was informed by Defendant Carignan that the proof of service improperly contained the last name of "Neil," rather than Jermano. *Id.* at 20 of 115. Defendant Carignan or another officer(s) then drove to the home of Plaintiff's former roommate, Julie Growe, who stated that Plaintiff had

-7-

moved out two days before. *Id.* Growe confirmed that she had spoken with D'Angelo earlier the same day. *Id.*

On January 23, 2009, D'Angelo signed a notarized proof of service stating that he had served "Amelia Germaine" at 8:15 p.m. on the night of January 21, 2009. *Id.* at 57 of 115. Magner's stop at the police station on January 21, 2009 would have followed the 3:15 p.m. issuance of the PPO. It is clear from Defendant Carignan's report that after 3:15 p.m., Plaintiff attempted to serve the PPO, then arrived at the station. The police report appears to suggest that D'Angelo, attempting to serve Plaintiff, had instead served Julie Growe. *Id.* at 20 of 115. The police report does not show what time Magner arrived at the police station and it is impossible to speculate whether D'Angelo would have been able to serve Plaintiff *after* discovering that he had erroneously attempted service on Growe. Moreover, the report states that Magner was "[adamant]" that it was Plaintiff, not Growe who was served prior to the time she and D'Angelo came to the police station. *Id.*

However, even assuming that D'Angelo had reason to know that at the time he signed and submitted the proof of service that Plaintiff had not been properly served, the relevant issue is not D'Angelo's motivation, but whether present Defendants reasonably believed that Plaintiff had been properly served at the time the warrant was issued.

Plaintiff cannot show that present Defendants pursued her arrest with an ulterior motive. First, at the time that the arrest warrant was issued on February 20, 2009 for Plaintiff's delivery of the roses and teddy bear to Magner, D'Angelo had long since provided a signed and notarized proof of service stating that the PPO had been served. Had Carignan and/or assisting officers Tetler or Bruce later compared the January 21, 2009 report to the proof of service submitted two days later by D'Angelo, they might have reason to question

-8-

D'Angelo's proof of service. However, the February 14, 2009 police report pertaining to the roses and teddy bear was created by Defendant Zarfl. *Id.* at 64 of 115. None of the officers involved in the January 21, discussion with Magner and D'Angelo appears to have been involved in the February 14 investigation.

Further, Zarfl's report states that upon arriving at Magner's home, Magner showed him the PPO and the notarized proof of service. *Id.* at 58 of 115. According to the report Zarfl observed the rose/teddy bear delivery lying outside "near the curb" of Magner's house and collected a greeting card from "Amelia" stating "can you hear me now." *Id.* Magner reported that the handwriting on the card matched Plaintiff's. *Id.* Thus, at the time Zarfl made his report, he had reason to believe that (1) The PPO had been properly served, and (2) Plaintiff had violated the PPO. Further, Plaintiff's attempts to discredit Zarfl's report by claiming that a receipt for the flower delivery shows that the delivery was made on February 15 are unavailing. In fact, the receipt states that the flower shop employee was "out on delivery" on the 14th and merely confirmed the delivery the following morning. *Id.* at 80 of 115.

Additional evidence supported the conclusion that Plaintiff violated the PPO. On February 16, 2009, Danielle Krauthofer, the individual who took the flower order, identified the purchaser as Plaintiff. *Id.* at 68 of 115. According to the report, Krauthofer noted that Plaintiff had asked her "what would be done on their end if the police were called." *Id.* at 68, 77-78 of 115. Taylor's report of the Krauthofer interview also notes that Magner "was able to get the PPO served on 1/21/2009." *Id.* Thus, as of the time the warrant was requested, Taylor reasonably believed that (1) a crime had been committed and (2) Plaintiff had been properly served. While charges against Plaintiff for aggravated stalking were later dropped on the basis that she had not been properly served, the facts and circumstances before Taylor

-9-

supported the conclusion that probable cause existed for Plaintiff's arrest.

Plaintiff's theory that these Defendants pursued her arrest with an ulterior motive is also defeated by the time line of events. Notably, it was Plaintiff's delivery of flowers to Magner that precipitated the warrant for her arrest. To accept Plaintiff's account, one would be required to accept the implausible scenario that Taylor or any other officer involved in the investigation (1) was aware that she had not been properly served (2) then lay in wait for the next three weeks in anticipation that she would unwittingly violate the unserved PPO. Because Plaintiff cannot show that any other Oak Park officer sought her prosecution despite the absence of probable cause, these claims fail. *Stemler,* 126 F.3d at 871.

Because Plaintiff cannot show a constitutional violation by these Defendants, claims against them would also be barred by qualified immunity. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) ( *citing Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

### C. Official Capacity Claims

Plaintiff's claims against individual Defendants in their *official* capacities, *i.e,* in their capacity as agents of the state under 42 U.S.C. § 1983, are subject to dismissal on the basis of the immunity granted by the Eleventh Amendment.[4] *Will v. Michigan Dept. of State*

---

[4]

While "[Eleventh Amendment] immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law," *Ernst v. Rising,* 427 F.3d 351, 358-359 (6th Cir.2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), any request injunctive relief against these individuals is mooted by Plaintiff's failure to allege plausible constitutional or state claims against these individuals.

*Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

### D. 42 U.S.C. § 1983-Municipal Claims (Counts III-IV)

Plaintiff's constitutional claims against Defendant City of Oak Park Police Department are similarly problematic. First, a municipal police department, an agency of the municipality, is not the proper party in interest in a tort action; rather, the municipality itself is the proper party. *Haverstick Enterprised, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d 989, 992, fn. 1 (6th Cir.1994)("A suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest"); *Moomey v. City of Holland,* 490 F.Supp. 188, 189 (W.D.Mich.1980)(same); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994).

Second, even assuming that Plaintiff had properly directed her claims against the City of Oak Park, the absence of a constitutional violation would foreclose municipal liability. "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001)(citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). Third, Plaintiff has not articulated a plausible claim that the alleged constitutional violations were the result of a policy or custom promulgated by the City of Oak Park or that supervisors acquiesced to such behavior. *Monell v. Department of Social Services of City of New York* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). *See also Johnson v. City of Detroit,* 944 F.Supp. 586, 598 (E.D.Mich.1996). Aside from Defendants' contention that James Hock, the Oak Park City Manager, "does not supervise or otherwise control the actions of the Oak Park police," *Defendants' Brief* at 4, Plaintiff's inability to show a constitutional violation against the Defendant police officers

also forecloses claims against Hock.

### E. Conspiracy Claims (VI-VII)

Likewise, Plaintiff has not articulated a plausible claim of conspiracy against these individuals. 42 U.S.C. § 1985(3) "prohibits a conspiracy 'for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.'" *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 314 (6th Cir.2005); 42 U.S.C. § 1985. To maintain a cause of action under a § 1985 claim, "one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Radvansky,* 395 F.3d at 314 (6th Cir.2005)(internal citations omitted).

In alleging conspiracy, the claimant must demonstrate "'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Id.* (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Plaintiff's allegations that the present Defendants acted with discriminatory animus based on her sexual orientation does not state a § 1985(3) claim. "[H]omosexuals are not a protected class for purposes of 42 U.S.C. § 1985(3)." *Preston v. Hughes,* 178 F.3d 1295, 1999 WL 107970, at *1 (6th Cir .1999)(unpublished); *Vega v. Artus,* 610 F.Supp.2d 185, 204 -205 (N.D.N.Y. 2009)(same). Further "'[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Moldowan, supra,*

578 F.3d at 395 (citing *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987)).

Plaintiff alleges no factual basis for the conspiracy claim aside from conclusory allegations that these Defendants conspired to deprive her of her civil rights. Her failure to allege a violation of § 1985 also moots the 42 U.S.C. § 1986 claim that these Defendants failed to prevent the commission of a conspiracy.

### F. State Law Claims

#### 1. Abuse of Process (Count XIII)

Plaintiff cannot establish an abuse of process claim by any of the Oak Park Defendants. To recover under a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding." *Bonner v. Chicago Title Ins. Co.,* 194 Mich.App. 462, 472–473, 487 N.W.2d 807, 812–813 (1992). First, as discussed above, Plaintiff cannot show that these Defendants had an ulterior purpose in obtaining a warrant for her arrest. Further, Plaintiff has not made a plausible claim that Defendants's actions subsequent to the arrest amounted to "abuse of process." *See Garcia v. Thorne,* 2012 WL 1830206, *10 (W.D.Mich. May 18, 2012)(citing *Spear v. Pendill,* 164 Mich. 620, 623, 130 N.W. 343, 344 (1911)). I note that after Plaintiff's arrest, D'Angelo did not back away from his earlier statement that he served Plaintiff on January 21, 2009 and to the contrary, on May 11, 2009, he submitted an "Oak Park Public Safety Witness Statement" describing his alleged service of Plaintiff on January 21. *Docket #82-2,* 100 of 115.

#### 2. Stalking (Count XIV)

Plaintiff's claim that these Defendants "stalked" her is also subject to dismissal. Under Michigan's stalking statute, "[c]onduct that is constitutionally protected or that serves

a legitimate purpose does not constitute 'unconsented contact' and thus cannot amount to harassment." *Hayford v. Hayford* 279 Mich.App., 324, 332, 760 N.W.2d 503, 509 (2008)(citing *Nastal v. Henderson & Assoc. Investigations, Inc.,* 471 Mich. 712, 723, 691 N.W.2d 1 (2005); MCL 750.411h(1)(c)). "The Michigan Supreme Court has interpreted the phrase 'conduct that serves a legitimate purpose' to mean 'conduct that contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute.'" *Hayford,* at 233 (citing *Nastal, supra* at 723). Plaintiff cannot show that any of the Oak Park Defendants were not acting with a "legitimate purpose" when investigating Magner's reports of harassment or finding that probable cause existed for Plaintiff's arrest.

### 3. Intentional and Negligent Infliction of Emotional Distress (Counts XVII-XVIII)

For overlapping reasons, the claims of intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress must be dismissed. To establish a claim of IIED a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford,* 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). Plaintiff cannot show present Defendants' actions were unreasonable, much less outrageous.

> A claim of NIED must include the following elements:
>
> (1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not present, at least shock 'fairly contemporaneous' with the accident.

*Aureus Holdings, Ltd. v. City of Detroit,* 2006 WL 1547639, *9, FN26 (E.D.Mich.,2006) (Cohn, J.) ( *citing Hesse v. Ashland Oil, Inc.,* 466 Mich. 21, 34, 642 N.W.2d 330, 337

(2002)). Because Plaintiff has not alleged even one of these elements, this claim must also be dismissed.

### 4. Elliot-Larsen Civil Rights Act Claims (Count XXIV)

Plaintiff's basis for this claim, while unclear, is inapplicable to the events surrounding present Defendants' investigation of Magner's claims. "Under the ELCRA, a person may not '[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.'" *Downing v. Life Time Fitness, Inc.* 2011 WL 2014771, *6 (E.D.Mich. May 24, 2011)(citing M.C.L. § 37.2302(a)). While a "public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment," it is unclear whether the exclusion applies to Plaintiff, a pretrial detainee at the time of her incarceration. M.C.L. § 37.2301(b). Nonetheless, because Plaintiff has not explained how the ELCRA claim applies to these Defendants, the claim must be dismissed.

### 5. Malicious Prosecution (Count XXV)

In Michigan, a claim of malicious prosecution in a criminal case contains the following elements:
> (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Matthews v. Blue Cross and Blue Shield of Michigan,* 456 Mich. 365, 377-378, 572 N.W.2d 603, 609 - 610 (1998). As discussed in regard to Plaintiff's constitutional claim of malicious

prosecution, this claim founders on Plaintiff's inability to show a lack of probable cause.

### 6. Governmental Immunity

Insofar as Plaintiff imputes the individual Defendants' actions to the City of Oak Park, her claims are barred by governmental immunity. M.C.L. § 691.1407(1). Because under M.C.L. § 691.1407(1), the City of Oak Park is "a governmental agency" and "the operation of the police department is a governmental function," this Defendant enjoys immunity from the intentional tort's of its employees. *Davis v. City of Dearborn,* 2011 WL 3320505, *2 (E.D.Mich. August 1, 2011); M.C.L. § 691.1407(1).

As to the individual Defendants, governmental immunity for intentional torts is available if "(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c) the acts were discretionary, as opposed to ministerial." *Odom v. Wayne County,* 482 Mich. 459, 480, 760 N.W.2d 217, 228 (2008); M.C.L. § 691.1407(3). As discussed above, Plaintiff cannot show that the individual Defendant police officers acted with malice in investigating Magner's claims or requesting a warrant for Plaintiff's arrest. Moreover, these acts, taken within the course of employment were discretionary. Thus, they are immune from the intentional tort claims.

Aside from Plaintiff's failure to allege factual basis for her claims against city manager James Jock, he enjoys absolute immunity under § 691.1407(5) which provides as follows:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Because Plaintiff has not alleged that Hock was acting outside his prescribed duties as the highest appointive executive of the City, he is entitled to absolute immunity. *Swire v. City of Clare,* 2002 WL 662800, *10 (E.D.Mich. March 28, 2002).

### IV.   CONCLUSION

For these reasons, I recommend that the motion [Docket #82] be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 4, 2013

-17-

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 4, 2013.

| | |
|---|---|
| 1.M. Amelia (Neal) Jermano<br>PO Box 58<br>Birmingham, MI 48012-0058 | s/Johnetta M. Curry-Williams<br>Case Manager |